646 So.2d 995 (1994)
STATE of Louisiana,
v.
Jacob GORDON, Jr.
No. 93 KA 1922.
Court of Appeal of Louisiana, First Circuit.
November 10, 1994.
*998 Doug Moreau, Dist. Atty., Baton Rouge, for State of La.
Eugene A. Booth, Baton Rouge, for defendant-appellant.
Before CRAIN, FOIL and WHIPPLE, JJ.
CRAIN, Judge.
Defendant, Jacob Gordon, Jr., and co-defendants Shirley Gordon and James Douglas[1] were jointly charged by bill of information with possession with intent to distribute cocaine, violations of LSA-R.S. 40:967 A. Defendant and co-defendant Shirley Gordon were jointly tried by jury; and both were found guilty as charged. The trial court sentenced defendant to imprisonment at hard labor for ten years with credit for time served and ordered that the sentence run consecutively to any other sentence defendant was then serving. Defendant has appealed, urging three assignments of error:[2]

*999 1. The jury's verdict is contrary to the law and the evidence introduced at the trial of this case.
2. The trial court erroneously refused to suppress for use as evidence at the trial items seized during warrantless searches by the police on or about January 8, 1993, of the persons of "defendants" and of the automobile in which they were riding.[3]
At about 12:45 a.m. on January 8, 1993, Baton Rouge City Police Officers Lyle Johnson and Wally Cowart were together in their marked police unit patrolling the interstate in East Baton Rouge Parish when they observed a 1982 Pontiac passenger automobile traveling eastbound on I-12 without a license plate on it, a violation of state law. They pursued the car and stopped it on I-12 near the O'Neal Lane exit.
At Johnson's request, defendant, the driver of the car, exited the car and stepped to its rear. Johnson asked defendant for his driver's license and questioned him concerning the ownership of the car and the absence of a license plate on the vehicle. While engaging defendant in this conversation, Johnson smelled what he thought was the odor of burned marijuana on defendant's person.
Meanwhile, Cowart, who had been standing at the front of the police unit a few feet behind Johnson and defendant listening to their conversation, decided to approach the passenger side of the Pontiac to see who might be in the car. When Cowart went to the passenger side of the car at the open front window, he smelled what he believed to be the odor of marijuana coming from the interior of the vehicle. While outside the car shining his flashlight inside the car at Shirley Gordon, defendant's wife, who was seated on the front passenger seat with her purse in her lap, Cowart observed in plain view a cellophane baggy containing some white powder. He suspected the powder was cocaine in Shirley's purse.
At that point, Cowart had Shirley Gordon and James Douglas, the backseat passenger, exit the car and walk to the police unit. Cowart conferred with Johnson. The three subjects were placed under arrest, and Johnson advised all three of their Miranda rights and patted down each of them. Cowart searched the passenger compartment of the Pontiac, and seized a blue bag from the backseat area of the car, a film canister that was found in the console area between the front seats of the car and Shirley Gordon's purse, which was jointly searched by the officers.
The subjects were transported to the narcotics office. A search of defendant by Johnson, conducted after defendant's arrest and apparently at the narcotics office yielded $2,190.00 and some business cards which were found inside defendant's wallet. No drugs were found on defendant's person. In addition to various items of drug paraphernalia found in the console area of the car, the blue bag and Shirley Gordon's purse, a baggy containing approximately one gram of suspected cocaine and two baggies containing a total of about five grams of suspected marijuana were found in Shirley Gordon's purse. There also was a film canister in the blue bag which contained about one-tenth gram of suspected cocaine. Additionally, a suspected marijuana roach was found in the blue bag, and several other marijuana roaches were recovered from Shirley Gordon's purse. Results of subsequent laboratory chemical analyses as reflected in the laboratory report, State Exhibit S-1 the suspected items determined to contain cocaine and marijuana, respectively.

DENIAL OF MOTION TO SUPPRESS
Defendant asserts that the trial court erroneously denied the motion to suppress physical evidence seized from the Pontiac and from his person on the basis that the searches were illegal.[4] However, the only *1000 argument advanced by defendant is that the cocaine found in Shirley Gordon's purse was neither in plain view of Cowart nor was it inadvertently discovered by him.
Initially, we note that defendant does not contest the validity of the investigatory stop of the Pontiac. Clearly, the record supports a finding that the stop was based on reasonable suspicion, since the car was being operated without the required license plate in violation of state traffic laws. See LSA-R.S. 47:507 & 537; LSA-R.S. 32:51 & 57.
At the conclusion of the suppression hearing, the trial court denied the motion to suppress and indicated that it credited the testimony of Officers Johnson and Cowart and not that of Shirley Gordon. More particularly, the court stated that it believed that the officers smelled the odor of marijuana at the scene of the stopped vehicle and that the contraband was seen in plain view. This determination turned on credibility. We find no error in the trial court's finding, which we must give great weight. State v. Keller, 403 So.2d 693, 696 (La.1981); State v. Hale, 481 So.2d 1056, 1059 (La.App. 1st Cir.1985), writ denied, 484 So.2d 668 (La.1986).
The Fourth Amendment to the United States Constitution and Article I, § 5, of the Louisiana Constitution prohibit unreasonable searches and seizure. A warrantless search is unreasonable unless the search can be justified by one of the narrowly drawn exceptions to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Tatum, 466 So.2d 29, 31 (La.1985). One of these exceptions is a search incident to a lawful arrest made of a person and the area in his immediate control. State v. Raheem, 464 So.2d 293, 296 (La.1985). Another exception is the "automobile" exception which is based upon the existence of probable cause to search the vehicle and exigent circumstances which render it impractical to secure a warrant. State v. Gamboa, 543 So.2d 1129, 1131 (La.App. 1st Cir.), writ denied, 550 So.2d 646 (La.1989).
The present standard for warrantless "automobile" searches under the Fourth Amendment was expressed in United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). In Ross, the United States Supreme Court held that police officers who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed within it may conduct a search of the vehicle that is as thorough as a magistrate could authorize in a warrant particularly describing the place to be searched. 456 U.S. at 825, 102 S.Ct. at 2173. "The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found." 456 U.S. at 824, 102 S.Ct. at 2172.
For constitutional purposes, there is no difference between, on the one hand, seizing and holding a car before presenting the probable cause issue to a magistrate and, on the other hand, carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment and the Louisiana Constitution. State v. Tatum, 466 So.2d at 31.
Clearly, here, there was probable cause to search the vehicle under the automobile exception and to arrest the three subjects and conduct searches of each of them as incidents to those lawful arrests.[5] Both officers were experienced in narcotics *1001 investigation and detection.[6] Johnson testified that he detected the odor of burned marijuana on defendant's person when defendant exited the Pontiac and engaged in conversation with him. Likewise, when Cowart walked up to the open window at the passenger door of the car to talk to Shirley Gordon, he too smelled the odor of marijuana. Detecting marijuana by means of smell does not constitute a search, and there is no reasonable expectation of privacy from lawfully positioned officers with inquisitive nostrils. See State v. Garcia, 519 So.2d 788, 793-794 (La. App. 1st Cir.1987), writ denied sub nom., State v. Rodriguez, 530 So.2d 85 (La.1988). Furthermore, the information obtained as a result of observation of an object in plain view may be considered in determining probable cause or reasonable suspicion of criminal activity. See Texas v. Brown, 460 U.S. 730, 738 n. 4, 103 S.Ct. 1535, 1541 n. 4, 75 L.Ed.2d 502 (1983). See also State v. Bracken, 506 So.2d 807, 812 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987) (in which this court stated that the plain view doctrine provides a means of securing probable cause). Notwithstanding any assertion by defendant to the contrary, Cowart's testimony revealed that he observed the baggy containing the white substance which he suspected was cocaine in plain view[7] inside Shirley Gordon's purse after he walked up to the Pontiac and while he was talking to her from outside the car.[8]
Under the circumstances present herein, the trial court's ruling denying the motion to suppress is supported by the record. Thus, defendant's assignment lacks merit.

SUFFICIENCY OF THE EVIDENCE
Defendant asserts that the evidence was insufficient to convict him of the instant offense. He submits that the evidence shows that he did not have any drugs or drug paraphernalia on his person, the small quantity of cocaine found by the police was either in Shirley Gordon's purse or the blue bag "owned" by James Douglas, and the quantity of drugs recovered is insufficient to reasonably conclude that defendant intended to distribute cocaine. Defendant also argues that it would be unreasonable to find him to have been in constructive possession on the basis that his wife was in possession of a small *1002 quantity of cocaine and that to find him in constructive possession "would make possession crimes a form of community property, i.e.[,] one spouse could be held criminally liable for the possession of the other spouse."
The proper method to raise the issue of insufficient evidence is by motion for post-verdict judgment of acquittal pursuant to LSA-C.Cr.P. art. 821. See State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). The record does not indicate defendant made such a motion, but it does contain an assignment of error which alleges the evidence was not sufficient. Therefore, this Court will review the sufficiency of the evidence, although this issue was not properly raised. In doing so, we will consider the evidence as though a motion for post-verdict judgment of acquittal had been filed under LSA-C.Cr.P. art. 821.
In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That standard is that the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, is sufficient to convince a rational trier of fact that all of the elements of the crime have been proved beyond a reasonable doubt. State v. Captville, 448 So.2d 676, 678 (La. 1984). The standard has been codified in LSA-C.Cr.P. art. 821.
When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This statutory test is not a purely separate one from the Jackson constitutional sufficiency standard. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. State v. Rosiere, 488 So.2d 965, 968 (La.1986).
The crime of possession with intent to distribute cocaine is defined as follows: "it shall be unlawful for any person knowingly or intentionally ... [t]o ... possess with intent to ... distribute ... a controlled dangerous substance classified in Schedule II." LSA-R.S. 40:967 A(1). Thus, in order to support a conviction, the state must prove beyond a reasonable doubt that the defendant possessed the drug with the intent to distribute it.
The jurisprudence has not established precise guidelines as to what constitutes "possession" of drugs under the narcotics laws. State v. Trahan, 425 So.2d 1222, 1226 (La.1983). However, one need not physically possess the controlled dangerous substance to violate the prohibition against possession; constructive possession is sufficient. A person may be in constructive possession of a controlled dangerous substance if it is subject to his dominion and control, regardless of whether or not it is in his physical possession. State v. Edwards, 354 So.2d 1322, 1327 (La.1978). The mere presence in the area where narcotics are discovered or mere association with the person who does control the drug or the area where it is located is insufficient to support a finding of possession. State v. Tasker, 448 So.2d 1311, 1314 (La.App. 1st Cir.), writ denied, 450 So.2d 644 (La.1984). However, a person may be in joint possession of a drug if he wilfully and knowingly shares with another the right to control the drug. State v. Sweeney, 443 So.2d 522, 529 (La.1983).
A determination of whether or not there is "possession" sufficient to convict depends on the peculiar facts of each case. State v. Trahan, 425 So.2d at 1226. Several factors may be considered in determining whether or not a defendant exercised "dominion and control" over a drug, including: a defendant's knowledge that illegal drugs are in the area; the defendant's relationship with the person found to be in actual possession; the defendant's access to the area where the drugs were found; evidence of recent drug use by the defendant; the defendant's physical proximity to the drugs; and any evidence that the particular area was frequented by drug users. State v. Tasker, 448 So.2d at *1003 1314. See also State v. Love, 527 So.2d 62, 64 (La.App. 3rd Cir.1988).
In order to prove the element of intent to distribute state must prove the defendant's subjective specific intent to possess in order to distribute. State v. Hills, 498 So.2d 240, 243 (La.App. 1st Cir.1986), writ denied, 503 So.2d 13 (La.1987). Specific intent is a state of mind. It need not be proven as a fact and may be inferred from the circumstances present and the actions of the defendant. State v. Fisher, 628 So.2d 1136, 1141 (La.App. 1st Cir.1993), writs denied, 94-0226 & 94-0321 (La. 5/20/94); 637 So.2d 474, 476.
Certain factors are useful in determining whether circumstantial evidence is sufficient to prove the intent to distribute a controlled dangerous substance. These factors include:
(1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute.
State v. Hearold, 603 So.2d 731, 735 (La. 1992). The presence of large sums of cash also is considered circumstantial evidence of intent. State v. Jordan, 489 So.2d 994, 997 (La.App. 1st Cir.1986).
While there was no evidence that defendant was in actual possession of cocaine, there was evidence that he had constructive possession of cocaine. Defendant was the driver of the Pontiac, which he stated was his car. He was seated beside his wife, who was in actual possession of the cocaine recovered from her purse. Since Cowart could see the drug in plain view in the purse, it is only reasonable to conclude that defendant knew the drug was in the purse and could also see the drug. The marijuana roaches found inside the car, Johnson's detection of what he thought was the odor of burned marijuana on defendant's person and the fact that Cowart smelled what he believed was the odor of marijuana coming from the interior of the car constituted factors evidencing the presence of drugs and/or recent drug usage. Defendant's purported ownership of the car and his proximity to the cocaine possessed by his wife provided him access to the cocaine. Based on the foregoing circumstances, there was sufficient evidence of defendant's dominion and control of cocaine and, thus, his constructive possession of the drug.
We now focus our attention more particularly on the evidence of defendant's intent to distribute the cocaine. When James Douglas was questioned at the narcotics office, he stated that on the evening preceding the investigatory stop he had found the blue bag on the side of the Broadmoor Theatre. Johnson stated that he did not recall Douglas saying that, at the time he found the blue bag, he was in the presence of defendant and Shirley Gordon. When Johnson asked defendant about the ownership of the Pontiac at the scene of the investigatory stop, defendant stated that it belonged to him, he was a used car dealer and owned a car lot in Walker. While talking to defendant, Johnson detected what he thought was the odor of marijuana coming from Jacob Gordon's person; and, when Cowart walked up to the open window on the passenger side of the Pontiac and spoke to Shirley Gordon, he too smelled what he believed to be marijuana coming from the interior of the vehicle. Cowart testified that, when he asked Shirley Gordon where she, defendant and James Douglas had been on the night of the offense, she stated that they had just been riding around and she did not indicate that they had been to the Broadmoor Theatre. Similarly, Johnson testified that defendant did not at any time advise him that he, Shirley Gordon and Douglas had been to the Broadmoor Theatre. Johnson's testimony reflects that James Douglas and Shirley Gordon told the police that Douglas was an employee of defendant and Shirley Gordon and that Douglas was "staying at their place of business."
Liana Bergeron testified that the Gordons are her father and stepmother, respectively, *1004 and that they have a car lot business named Guaranty Auto. Bergeron confirmed that in 1993 James Douglas was an employee of this business.
The quantity of cocaine seized was small, i.e., about one gram found in the baggy inside Shirley Gordon's purse and about one-tenth gram found in the film canister which was in the blue bag. According to Johnson, a gram of cocaine had a street value of about eighty to one hundred dollars; and one tenth gram of the drug had a street value of about twenty dollars. Although the quantity of the substance was small and its street value low, there were considerable other circumstances and factors present from which the requisite specific intent to distribute could be inferred.
All the items of physical evidence seized in this case were seized by either Johnson or Cowart. The testimony given by Cowart and Johnson revealed that the items were tagged and placed into evidence by Johnson who, at that time, catalogued the evidence by writing down the name of each particular item and the location from which it was seized. Although Cowart could not recall the specific location from which several of the items were seized, Johnson testified extensively concerning the various items (comprising State Exhibits S-2, S-3 and S-4) that were seized and the locations from which the seizures were made.
State Exhibit S-2 included the baggy containing cocaine and a bag containing suspected baking soda, each of which were found in Shirley Gordon's purse. S-2 also included a film canister containing suspected baking soda that was seized in the console area between the front seats of the Pontiac. Laboratory analyses of both items of suspected baking soda revealed that neither item contained a controlled dangerous substance, which was consistent with Johnson's suspicion that the substances were baking soda. Johnson stated that his suspicion that the items were baking soda was based on his experience as a narcotics officer in executing search warrants and effecting street arrests of drug offenders.
Johnson testified that baking soda is a common cutting agent used by drug dealers as an additive to dilute the strength of cocaine. According to Johnson, baking soda is the most commonly used cutting agent. He also stated that baking soda is a component utilized in the process of making crack cocaine.
S-2 also contained a case which contained a mirror and a razor blade. According to Cowart, the case was recovered from the blue bag. Although Johnson initially testified that the case was found in Shirley Gordon's purse, in subsequent testimony he indicated that he deferred to Cowart's testimony that the case was found in the blue bag.
Johnson explained the significance of the mirror and razor. He stated that the razor is used in the process of distribution of cocaine to cut cocaine on the mirror to reduce it from brick form or chunks to a fine powder. However, he indicated that a razor is also used to "line it [cocaine] out" for consumption through a straw into one's nose.
State Exhibit S-3 contained various items of physical evidence including several items recovered from Shirley Gordon's purse, viz., four crack pipes, a pack of zig zag rolling papers and two film canisters. One of the film canisters contained steel wool, and the other canister contained baggy corners and bread ties. According to Johnson, the baggy corners had nothing in them; but two of the pipes had steel wool in them.
Johnson indicated that cocaine and marijuana are commonly packaged for distribution in baggy corners tied with bread ties. According to Johnson, steel wool is usually used as a filter in a crack pipe to prevent the heated, melted cocaine from flowing down the pipe into one's mouth while the drug is being smoked.
In addition to the large amount of cash ($2,190.00) seized from defendant's person, several of the business cards seized from defendant's wallet bore notations. Two of the cards had notations which Johnson stated were consistent with the term "grams." The notations on one card read "663 grams," and on another card there was a notation stating "225 grams short." Johnson testified that narcotics are commonly weighed and sold in gram amounts.
*1005 State Exhibit S-4 contained the blue bag and its contents. There was a little red notebook inside the blue bag. In the back of this notebook there is a list of numbers with a "Q" in parentheses followed by "OZ," which according to Johnson is an apparent abbreviation for "ounce." The blue bag also contained zig zag rolling papers, a pair of scissors, several straws (described by Johnson as cut off in short lengths), a piece of pipe similar to that found in Shirley Gordon's purse, and a container with pieces of steel wool in it. According to Johnson, cocaine is normally ingested into the nasal passages using straws cut off in short lengths.
As previously stated, there was sufficient evidence of defendant's constructive possession of cocaine. Notwithstanding the small quantity and value of cocaine seized, any rational trier of fact could have inferred that defendant had the requisite intent to distribute cocaine based on the direct and circumstantial evidence introduced at trial and particularly based on the large amount of cash and the business cards (bearing the notations) seized from the person of defendant, the presence of drug paraphernalia in Shirley Gordon's purse and inside the Pontiac (including but not limited to the crack pipes, the suspected baking soda and the bread ties and empty baggies) and Johnson's testimony (pertaining to weights and measures used in narcotics distribution, the consumption of cocaine, dilution of cocaine by use of a cutting agent such as baking soda, and the packaging and distribution of cocaine in baggy corners tied with bread ties).
Thus, viewing all the evidence both direct and circumstantial in the light most favorable to the state, any rational trier of fact could have concluded beyond a reasonable doubt and to the exclusion of any reasonable hypothesis of innocence that defendant possessed cocaine with the intent to distribute. Consequently, this assignment lacks merit.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The record does not reflect the status of the charge against James Douglas.
[2] Shirley Gordon appealed in a separate appeal. See State v. Gordon, docket number 93 KA 1923, 646 So.2d 1005 (La.App. 1st Cir.1994) also decided this date.
[3] Additionally, without alleging any specific errors, defendant assigned as errors any errors patent on the face of the record, which is essentially a general request that this Court examine the record for errors patent. Such a request is unnecessary and serves no purpose, since this Court routinely examines all criminal records for errors patent in accordance with LSA-C.Cr.P. art. 920(2). The examination of the record in this case revealed no such errors.
[4] We note that the evidence presented by the state at the suppression hearing consisted solely of the testimony of Officers Johnson and Cowart. The only evidence introduced by the defense at the suppression hearing was the testimony of Shirley Gordon.

However, we further note that, in determining whether the ruling on the motion to suppress was correct, we are not limited to the evidence adduced at the hearing on the motion. We may consider all pertinent evidence given at the trial of the case. See State v. Chopin, 372 So.2d 1222, 1223 n. 2 (La.1979).
[5] We note that because the search of defendant (as well as the other two subjects) could have been made at the scene of the stop where the arrests occurred, the subsequent search(es) at the narcotics office was (were) no less valid merely because it (they) occurred at a different location. See State v. Tomasetti, 381 So.2d 420, 423 (La. 1980).
[6] At the time of the instant offense, Cowart had slightly in excess of three years experience in narcotics investigation and detection; and Johnson had about three and one-half years of such experience. Although both officers were experienced at working with drug detection dogs, Cowart indicated that his experience included in excess of about three to four hundred occasions when he had personally detected marijuana without the aid of a drug detection dog. Similarly, Johnson stated that during his period of experience he had made several hundred arrests for possession of controlled dangerous substances (CDS) and several hundred arrests for possession with intent to distribute CDS or drug trafficking cases. Johnson further indicated that in his professional experience he had been trained in the detection of marijuana and from his experience he knew both the appearance and smell of marijuana. Prior to the instant offense, Johnson had many occasions to detect marijuana in its burned as well as its original (natural) forms.
[7] We conclude that the plain view sighting of the contraband in Shirley Gordon's purse coupled with the other circumstances in which Johnson smelled what he thought was the odor of marijuana on defendant and Cowart smelled what he believed was the odor of marijuana emanating from the Pontiac, provided probable cause for a search of the vehicle under the automobile exception. We note, however, that since Horton v. California, 496 U.S. 128, 136-38 and 140-42, 110 S.Ct. 2301, 2308 and 2310, 110 L.Ed.2d 112 (1990), only two conditions must be satisfied to trigger the applicability of the plain view doctrine: (1) there must be a prior justification for an intrusion into a protected area, and (2) it must be immediately apparent without close inspection that the items are evidence or contraband. Both of these conditions are clearly met in the instant case. We further note that defendant's assertion that the cocaine was not inadvertently discovered is misplaced, since the inadvertent discovery condition formerly required for the application of the plain view doctrine was deleted as a condition by Horton v. California. See State v. Williams, 588 So.2d 1239, 1242, n. 3 (La.App. 1st Cir.1991), writ denied, 592 So.2d 1333 (La.1992). Although we find that the seizure of the drug observed in plain view was lawful pursuant to the search under the automobile exception, the seizure of the drug also would have been legal under the plain view doctrine.
[8] Although Cowart stated that he was leaning over into the window of the car, he emphatically denied that he had his head inside the vehicle. Additionally, by way of clarification, Cowart elaborated that the Pontiac "sits real low and I would have to get way down" because it was "kind of a sports car and it sits real low."