STATE OF LOUISIANA
v.
LONNIE E. LAURENT.
No. 2007 KA 0324
Court of Appeals of Louisiana, First Circuit.
September 26, 2007.
NOT DESIGNATED FOR PUBLICATION
WALTER P. REED, District Attorney, Covington, LA and KATHRYN W. LANDRY, Special Appeals Counsel, Baton Rouge, LA, Attorneys for State of Louisiana.
HOLLI HERRLE-CASTILLO, Louisiana Appellate Project, Marrero, LA, Attorney for Defendant-Appellant, Lonnie E. Laurent.
Before: PARRO, KUHN, and DOWNING, JJ.
PARRO, J.
The defendant, Lonnie E. Laurent, was charged by bill of information[1] with attempted distribution of cocaine (count one), a violation of LSA-R.S. 40:979 and 967(A)(1), distribution of cocaine (count two), and possession with intent to distribute cocaine (count three), violations of LSA-R.S. 40:967(A)(1). The defendant entered a plea of not guilty. After a trial by jury, the defendant was found guilty as charged as to each count. The state filed a habitual-offender bill of information seeking to enhance count two. The defendant was adjudicated a second-felony offender. Pursuant to LSA-R.S. 15:529.1(A)(1)(a), the defendant was sentenced on count two to twenty-five years of imprisonment at hard labor. As to count one, the defendant was sentenced to ten years of imprisonment at hard labor. As to count three, the defendant was sentenced to ten years of imprisonment at hard labor. The trial court ordered that the sentences be served concurrently. The trial court denied the defendant's motion to reconsider sentence. The defendant now appeals, assigning error as to the sufficiency of the evidence to support the convictions and the constitutionality of the enhanced sentence imposed on count two. For the following reasons, we affirm the convictions, the habitual-offender adjudication, and the sentences as to each count.

STATEMENT OF FACTS
On or about May 5, 2004, Detective Justin Gibson of the Slidell Police Department worked undercover to conduct drug transactions at the residence of Monroe Laurent (the defendant's cousin) in Lacombe, Louisiana. Detective Gibson was equipped with a digital audio recorder and an audio transmitter. Other officers waited at a nearby location as Detective Gibson approached Monroe Laurent regarding the purchase of "hard" (crack) cocaine at approximately 6:40 p.m. Detective Gibson also inquired about the purchase of "soft" (powder) cocaine. Regarding the purchase of powder cocaine, Monroe told the detective that someone named "Lonnie" could obtain it for him.
Monroe introduced Detective Gibson to Lonnie, and Detective Gibson gave Lonnie forty dollars for the purchase of powder cocaine. Lonnie rode his bicycle onto a trail located in a nearby wooded area to a house behind the property where they were located. When Lonnie came back a short time later, he returned the money, and told Detective Gibson that the source of his supply for the powder cocaine was out.
On June 4, 2004, at approximately 3:20 p.m., Detective Gibson returned to Monroe's residence, again undercover. Detective Gibson observed Lonnie sitting in an inoperable van smoking what appeared to be crack cocaine. As Detective Gibson questioned Lonnie regarding the purchase of cocaine, Monroe approached them. The three individuals discussed Detective Gibson's proposal to purchase $60 worth of powder cocaine. Detective Gibson gave Lonnie the money, Lonnie obtained the cocaine, and the transaction was completed. Later that day, Detective Gibson seized powder cocaine and a small scale from the inoperable van during the execution of a search warrant. The defendant was present at the scene at the time of the execution of the search warrant. Detective Gibson identified the defendant as the "Lonnie" who participated in the attempted transaction on May 5th and the completed transaction on June 4th.

ASSIGNMENT OF ERROR NUMBER ONE
The defendant argues that the evidence was insufficient to negate the possibility of misidentification. The defendant notes that he was previously convicted of aggravated assault of Lieutenant Hart of the St. Tammany Parish Sheriff's Office. The defendant further notes that Lt. Hart suggested that the defendant was the "Lonnie" involved in the instant offenses. The defendant notes factual discrepancies in Detective Gibson's testimony regarding the date of the completed transaction and the value of the drugs purchased. The defendant also notes that Detective Gibson was only shown one photograph at the time of his photographic identification of the defendant. The defendant argues that Detective Gibson's identification is unreliable.
The defendant further argues that there is no evidence that the person who attempted to sell drugs to Detective Gibson on one occasion and sold powder cocaine to Detective Gibson on another occasion had actual or constructive possession of the drugs found in the van. The defendant notes that he did not have any money on his person at the time of his arrest. The defendant contends that there was no evidence that the drugs found in the van were not for personal consumption. The defendant concludes that the state failed to present sufficient evidence of possession with intent to distribute the cocaine found inside of the van.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also LSA-C.Cr.P. art. 821; State v. Wright, 98-0601 (La. App. 1st Cir. 2/19/99), 730 So.2d 485, 486, writs denied, 99-0802 (La. 10/29/99), 748 So.2d 1157, and 00-0895 (La. 11/17/00), 773 So.2d 732. The Jackson standard of review is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that, in order to convict, the trier of fact must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. State v. Graham, 02-1492 (La. App. 1st Cir. 2/14/03), 845 So.2d 416, 420. When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. See State v. Captville, 448 So.2d 676, 680 (La. 1984).
The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. State v. Taylor, 97-2261 (La. App. 1st Cir. 9/25/98), 721 So.2d 929, 932. Where the key issue raised by the defense is the defendant's identity as the perpetrator, rather than whether or not the crime was committed, the state is required to negate any reasonable probability of misidentification. State v. Johnson, 99-2114 (La. App. 1st Cir. 12/18/00), 800 So.2d 886, 888, writ denied, 01-0197 (La. 12/7/01), 802 So.2d 641. Positive identification by only one witness is sufficient to support a conviction. State v. Davis, 01-3033 (La. App. 1st Cir. 6/21/02), 822 So.2d 161, 163
LSA-R.S. 40:967(A) provides, in pertinent part, that it shall be unlawful for any person knowingly or intentionally: (1) to produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule II. Cocaine and its derivatives are listed in Schedule II. LSA-R.S. 40:964, Schedule II, (A)(4). A defendant is guilty of distribution of cocaine when he transfers possession or control of cocaine to his intended recipients. See LSA-R.S. 40:961(14); State v. Cummings, 95-1377 (La. 2/28/96), 668 So.2d 1132, 1135. "Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended[.]" LSA-R.S. 14:27(A).
In cases where the intent to distribute a controlled dangerous substance is an issue, a court may look to various facts: (1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of the drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggier or scales, evidencing an intent to distribute. State v. House, 325 So.2d 222, 225 (La. 1975).
A person not in physical possession of the drug is considered to be in constructive possession of a drug when the drug is under that person's dominion and control. Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession include: (1) his knowledge that illegal drugs were in the area; (2) his relationship with the person, if any, found to be in actual possession; (3) his access to the area where the drugs were found; (4) evidence of recent drug use by the defendant; and (5) his physical proximity to the drugs. It is well settled that the mere presence in an area where drugs are located or the mere association with one possessing drugs does not constitute constructive possession. See State v. Toups, 01-1875 (La. 10/15/02), 833 So.2d 910, 913. A person may be in joint possession of a drug if he willfully and knowingly shares with another the right to control the drug. State v. Gordon, 93-1922 (La. App. 1st Cir. 11/10/94), 646 So.2d 995, 1002.

Counts One and Two
The defendant does not argue that the state failed to establish any of the essential statutory elements of his convictions for attempted distribution of cocaine and distribution of cocaine, but rather contends the state failed to prove beyond a reasonable doubt his identity as the offender.[2] To prove identity, the state presented the testimony of Detective Gibson. Prior to the instant offenses, Detective Gibson had conducted undercover drug operations at Monroe Laurent's residence. According to Detective Gibson, the residence was located in an area known for drug dealing. Detective Gibson returned to Monroe's residence to conduct further transactions on the dates in question. Detective Gibson specifically recalled Monroe introducing the person involved in the instant offenses as "Lonnie." Detective Gibson said "Lonnie" and Monroe restated the name to confirm that the individual was being identified as Lonnie. Detective Gibson described Lonnie as younger and in better physical condition than Monroe. He further stated that Lonnie had a full head of darker hair and was unshaven. In court, Detective Gibson positively identified the defendant as Lonnie. Detective Gibson noted that the defendant had the same skin complexion, eyes, and facial features at the time of the trial as at the time of the offenses. He noted that the defendant was shaven and "a little more cleaned up" at the time of the trial.
When questioned regarding his vision, Detective Gibson stated that his eyes were tested one month before the trial and he had better than 20/20 vision in both eyes. On May 5th, Detective Gibson was standing within four feet of Lonnie when he exchanged money with him in an attempt to purchase powder cocaine. Detective Gibson was "a little shorter" than Lonnie. Detective Gibson made a conscious effort to focus on Lonnie's physical features. According to Detective Gibson, he was face-to-face with Lonnie for approximately twenty seconds. The offense took place at approximately 6:40 p.m., prior to sundown. Initially, Detective Gibson could not recall whether Monroe remained in his presence while Lonnie left to obtain the drugs. He added, "I'm sorry. It was another occasion when Monroe had left. Monroe was there, and we just had general conversation." When Lonnie returned, according to Detective Gibson, "he... said that the source of his supply for the soft, or the powder cocaine was out." Lonnie returned the money to Detective Gibson.
On June 4th, Detective Gibson initially made contact with the individual he remembered as Lonnie. Lonnie was sitting in an inoperable van located next to Monroe's shed, smoking what appeared to be crack cocaine with a pipe made from an aluminum can. It was approximately 3:20 p.m., at full daylight. Detective Gibson and Lonnie were in the midst of a conversation about drug purchasing when Monroe approached. Detective Gibson was within close proximity to Lonnie for approximately two minutes. On this occasion, Lonnie was able to obtain powder cocaine and the transaction was completed.
The state introduced and published the digital audio recordings of both incidents.[3] While the recording was highly muffled, two individuals can be heard stating the name Lonnie on the recording of the May 5th incident. Later in the recording, toward the end just prior to a recorded vocal synopsis of the incident, an individual stated, "Lonnie right, I'll holler at you later." During the recorded synopsis, the individual making the attempted sale was described as Monroe's cousin, Lonnie (at that time speculated as being spelled "L-O-N-N-Y").
At about 6:00 p.m. on June 4th, hours after the completed transaction, a search warrant was executed at Monroe Laurent's residence. At that time, the defendant was present. Detective Gibson was not present at the time of the entry, but eventually returned to the residence. The defendant was ultimately arrested. According to Detective Gibson, he identified the defendant at the scene as the Lonnie involved in the instant offenses. The officers conducted later operations that resulted in the arrest of several other individuals. On June 7th, three days after the defendant's arrest, Detective Gibson identified the defendant by photograph as the Lonnie involved in the instant offenses.
On cross-examination, Detective Gibson confirmed that Monroe Laurent was the original target of the undercover operations. Prior to the May incident (the fourth visit to Monroe Laurent's residence), Detective Gibson had never seen the defendant at Monroe's residence. Detective Gibson admitted that there was possibly more than one Lonnie in the area. Detective Gibson confirmed that he was shown a single photograph during the June 7th identification. During Detective Gibson's audio-recorded introduction to the June 4th incident, he stated that the date was July 4th. Detective Gibson stated that he was mistaken when he provided July 4th as the date and that the incident actually took place on June 4th.
Detective Powell of the St. Tammany Parish Sheriffs Office (the second and final state witness) also testified that Detective Gibson identified the defendant as "Lonnie" on June 4th (the date of the completed transaction, the search-warrant execution, and the defendant's arrest). Detective Powell noted a discrepancy in his police report as to the initial identification. The report stated that the June 7th photographic identification took place, but did not state that a previous on-scene identification took place. Detective Powell testified that the sixteen-page narrative was incorrect to the extent that it omits an on-scene identification.
During cross-examination, Detective Powell confirmed that Lt. Hart initially suggested that the defendant might possibly be the Lonnie involved in the instant offenses. When the subject was presented, Lt. Hart informed Detective Powell that he (as a narcotics detective) had had previous dealings with the defendant in the Lacombe, Louisiana area. Lt. Hart was also involved in a shooting incident with the defendant. The defense attorney further questioned Detective Powell regarding his report's absence of any indication that an on-the-scene identification took place. Detective Powell was specifically questioned regarding the following portion of his report:
When detectives were executing and entering the residence listed in the search warrant, detectives came into contact with Lonnie Laurent, date of birth, 7/11/1963. Lonnie Laurent was not positively identified as the perpetrator of the previous offenses at this time.
Detective Powell explained that Detective Gibson was not present at the time of the entry for the execution of the search warrant. Detective Gibson arrived at the area after several arrests began to take place. At that time, Detective Gibson positively identified the defendant as the perpetrator.
The defendant testified at the trial as the sole defense witness. The defendant testified that he was arrested on May 5th, as opposed to June 4th. However, the defendant admitted that he was possibly mistaken regarding the date of his arrest. The defendant confirmed that his arrest took place at Monroe Laurent's residence. On the date of his arrest, the defendant had installed a new "step porch" onto a mobile home located behind Monroe Laurent's mobile home. The defendant then installed the old step porch onto Monroe Laurent's mobile home. The defendant had been in the area from approximately 12:00 p.m. until the time of his arrest. The defendant said he did not see Detective Gibson while he was there or on any other occasion.
The defendant has a previous conviction of aggravated assault upon a peace officer, stemming from a domestic dispute between the defendant and his wife. According to the defendant, he was shot by Lt. Hart in relation to that incident. The defendant said he was informed that Lt. Hart was dissatisfied with the amount of jail time the defendant served regarding that offense.
The defendant stated that he was a certified floor installer and was not aware of any information regarding the instant offenses. When asked whether he believed Lt. Hart instigated the instant charges against him, the defendant responded affirmatively. The defendant specifically stated, "I feel that it's a big part of this whole operation against me because I never was a drug dealer."
During cross-examination, the defendant noted that Monroe Laurent had another cousin named Lonnie, Lonnie Ducre. Monroe Laurent did not have another cousin named Lonnie Laurent.
Based on a thorough review of the record, we are convinced that any rational trier of fact could have concluded beyond a reasonable doubt that the evidence was sufficient to exclude every reasonable hypothesis of innocence, to negate any reasonable probability of misidentification, and to prove that defendant was the perpetrator. The jury apparently found that Detective Gibson's identification of the defendant as the perpetrator of the instant offenses was reliable. Thus, we find sufficient evidence to support the convictions on counts one and two (attempted distribution of cocaine and distribution of cocaine).

Count Three
As to count three, on appeal the defendant raises issues regarding the evidence of identity and the elements of the offense. As we have already analyzed the evidence regarding identity and found such evidence sufficient, we will focus on the evidence to support the other elements of possession of cocaine with intent to distribute.
On June 4th, during the execution of the search wan-ant, Detective Gibson seized a bag containing suspected crack cocaine as well as a small scale. The scale was referred to as a "finger" or "pinkie" scale commonly used by street-level dealers, as it measures approximately one ounce of a substance. The cocaine and scale were located inside of the inoperable van that Detective Gibson observed the defendant sitting in earlier that day while smoking what appeared to be crack cocaine.
At the outset, we note that the defense counsel (in his opening statement and closing arguments to the jury) stated that the identity of the perpetrator was the central issue to be determined. The defense attorney's arguments did not contest the evidence of the other elements of the three offenses. In any event, we find that the evidence was sufficient to prove that the defendant had dominion and control of the drugs located in the van. It is apparent that the defendant and Monroe Laurent were drug-dealing coconspirators. The defendant was well aware of the presence of drugs in the area. The evidence is clear that the defendant had the right of entry and use of the van. Indeed, the defendant was the only person observed in the van on the date of the seizure at issue. There is no evidence to establish the entry or use of the van by any other person on the date in question, prior to the search and seizure. The defendant was on the property where the van was situated at the time of his arrest; thus, he was within close physical proximity to the drugs at the time of the discovery and seizure. While there was evidence of recent drug use by the defendant, there was evidence that the defendant also distributed drugs on that same day. The drugs found in the van were wrapped in cellophane. Also located in the van was a scale of the type often used by drug dealers, as it can be used to measure approximately one ounce of a substance. We find that the evidence was sufficient, when viewed in the light most favorable to the prosecution, to support the conviction for possession of cocaine with intent to distribute (count three). As we have also noted our finding of sufficient evidence on counts one and two, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
In the second and final assignment of error, the defendant argues that the twenty-five year sentence imposed on the enhanced count (count two) is unconstitutionally excessive. The defendant notes that such a sentence would have been near maximum if the statutory sentencing range for the underlying offense were applicable. The defendant contends that the trial court failed to consider several mitigating factors. The defendant specifies that he was not alleged to be a "kingpin," that he was not the target of the undercover operation, that the activity took place on Monroe Laurent's property, Monroe Laurent handled the initial negotiations, and "Lonnie" had to check with a supplier. The defendant further notes that the offenses are not crimes of violence, and no weapons were involved. The defendant also contends that the sentences imposed on counts one and three are excessive.
Article I, section 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. The Louisiana Supreme Court in State v. Sepulvado, 367 So.2d 762, 767 (La. 1979), held that a sentence that is within the statutory limits may still be excessive. Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it is so disproportionate as to shock one's sense of justice. State v. Hurst, 99-2868 (La. App. 1st Cir. 10/3/00), 797 So.2d 75, 83, writ denied, 00-3053 (La. 10/5/01), 798 So.2d 962. A trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of manifest abuse of discretion. Hurst, 797 So.2d at 83.
The Louisiana Code of Criminal Procedure sets forth items which must be considered by the trial court before imposing sentence. LSC.Cr.P. art. 894.1. The court is not required to list every aggravating or mitigating factor as long as the record shows ample consideration of the guidelines. State v. Herrin, 562 So.2d 1, 11 (La. App. 1st Cir.), writ denied, 565 So.2d 942 (La. 1990). The articulation of the factual basis for a sentence is the goal of Article 894.1. The goal is not to force a rigid or mechanical recitation of the factors. In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Mickey, 604 So.2d 675, 678 (La. App. 1st Cir. 1992), writ denied, 610 So.2d 795 (La. 1993). Thus, even without full compliance with Article 894.1, remand is unnecessary when the record clearly reflects an adequate basis for the sentence. State v. Lanclos, 419 So.2d 475, 478 (La. 1982); State v. Milstead, 95-1983 (La. App. 1st Cir. 9/27/96), 681 So.2d 1274, 1279, writ denied, 96-2601 (La. 3/27/97), 692 So.2d 392; State v. Greer, 572 So.2d 1166, 1171 (La. App. 1st Cir. 1990).
In State v. Dorthey, 623 So.2d 1276, 1280-81 (La. 1993), the Louisiana Supreme Court recognized that if a trial judge determines that the punishment mandated by the Habitual Offender Law makes no measurable contribution to acceptable goals of punishment or that the sentence amounts to nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime, he is duty bound to reduce the sentence to one that would not be constitutionally excessive. However, the holding in Dorthey was made only after, and in light of, express recognition by the court that the determination and definition of acts that are punishable as crimes is purely a legislative function. It is the legislature's prerogative to determine the length of the sentence imposed for crimes classified as felonies. Moreover, courts are charged with applying these punishments unless they are found to be unconstitutional. Dorthey, 623 So.2d at 1278.
As to count one, the defendant was subject to a maximum imprisonment term of fifteen years. LSA-R.S. 40:979 and LSA-R.S. 40:967(B)(4)(b). As a second-felony offender, the defendant was subject, under LSA-R.S. 15:529.1(A)(1)(a), to a minimum of fifteen years of imprisonment and a maximum of sixty years of imprisomnent. See LSA-R.S. 40:967(B)(4)(b). As to count three, the defendant was subject to a minimum of two years of imprisomnent and a maximum of thirty years of imprisonment. LSA-R.S. 40:967(B)(4)(b). The defendant was sentenced to ten years of imprisonment on counts one and three, and he received a sentence that was less than one-half of the maximum sentence on the enhanced count. The sentences are to be served concurrently. As noted, the defendant's previous conviction was for a crime of violence, aggravated assault upon a peace officer with a firearm, in violation of LSA-R.S. 14:37.2. Based on the record before us, we do not find that the trial court abused its discretion in imposing two terms of ten years of imprisonment and an enhanced sentence of twenty-five years of imprisonment, all at hard labor. It is immaterial as to where the enhanced sentence falls in the statutory range for the underlying offense. This assignment of error lacks merit.

REVIEW FOR ERROR
The defendant asks that this court examine the record for error under LSA-C.Cr.P. art. 920(2). This court routinely reviews the record for such errors, whether or not such a request is made by a defendant. Under LSA-C.Cr.P. art. 920(2), we are limited in our review to errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. After a careful review of the record in these proceedings, we have found no reversible errors. See State v. Price, 05-2514 (La. App. 1st Cir. 12/28/06), 952 So.2d 112, 123-25.
CONVICTIONS, HABITUAL-OFFENDER ADJUDICATION, AND SENTENCES AFFIRMED.
DOWNING, J., concurring in part and dissenting in part
I agree with the opinion except for its disposition of the conviction and sentence imposed on Count 3, possession with intent to distribute cocaine. The majority errs in requiring Mr. Laurent to prove his innocence. For example, the majority states: "There is no evidence to establish the entry or use of the van by any other person on the date in question, prior to the search and seizure." Mr. Laurent, as the defendant, has no burden to establish such evidence. Rather, the State has failed in its burden of proving beyond reasonable doubt that Mr. Laurent had constructive possession of the drugs at issue.
During cross-examination, Detective Gibson stated that he was not aware of any surveillance of Monroe Laurent's property after the June 4th transaction was completed (at approximately 3:34 p.m.) until the time of the execution of the search warrant (near 6:00 p.m.). When asked whether he had ever seen anyone else in the van at various times, Detective Gibson responded: "There was an unidentified person in it at one point, at one of the first purchases back in April. I seen Monroe in it, and I seen Lonnie in it." According to Detective Powell, there was limited surveillance of the area after the sale and before the search-warrant execution. Detective Powell specifically stated that there were "people in the area watching as best it is possible." Detective Powell admitted that it was possible for people to exit and enter the area (described as wooded) without being viewed.
Based on the evidence before us, I conclude that the State failed to prove that the defendant had dominion and control over the drugs seized during the search warrant execution. I first note that the record is unclear as to the form of the drugs located in the van. At one point Detective Gibson referred to the evidence as crack cocaine but later described it as powder cocaine. There was no testimony to establish in what part of the van the drugs were located. Since several individuals had access to the van, several hours had passed since the defendant was seen in the van until the evidence was seized, and it is unknown as to whether the drugs were in plain view or concealed, there is insufficient evidence of the defendant's knowledge of the presence of the drugs. The defendant's mere presence and access to the area where the drugs were located does not constitute constructive possession. Moreover, there was no evidence to establish the weight of the drugs. Based on the above conclusions, I conclude that the evidence to support the conviction for possession of cocaine with intent to distribute is insufficient. This assignment of error should be meritorious.
NOTES
[1] Several charges were brought against Monroe Laurent, the defendant's cousin, in the same bill of information. According to testimony presented at the trial, Monroe Laurent entered guilty pleas.
[2] The defendant does note a discrepancy between the amount Detective Gibson stated he paid for the powder cocaine on June 4th and the value listed on the property sheet. However, the defendant does not raise any issues regarding the admissibility of the evidence, and the evidence was admitted without objection.
[3] During the vocal synopsis for the June 4th transaction, Detective Gibson stated that the subject in question was known to him as "Lonnie Laurent." Detective Gibson stated "Lonnie" left in a van after the transaction was complete. As stated above, Detective Gibson's trial testimony indicates that Lonnie was sitting in an inoperable van when Detective Gibson approached.