797 So.2d 75 (2000)
STATE of Louisiana
v.
Riaunca HURST.
No. 99 KA 2868.
Court of Appeal of Louisiana, First Circuit.
October 3, 2000.
Writ Denied October 5, 2001.
*77 Doug Moreau, District Attorney, Baton Rouge, by Brent Stockstill, Creighton B. Abadie, Assistant District Attorneys, for Appellee, State of Louisiana.
Gwendolyn Brown, Baton Rouge, for Defendant/Appellant, Riaunca Hurst.
Before: CARTER, C.J., WEIMER, and FONTENOT,[1] JJ.
FONTENOT, Judge Pro Tem.
The defendant, Riaunca Hurst, was charged by grand jury indictment with one count of second degree murder, a violation of La. R.S. 14:30.1. She pled not guilty. The defendant moved to suppress the audio tape of the victim's 911 call, and to change her plea to not guilty and not guilty by reason of insanity, but both motions were denied. Following a jury trial, the defendant was found guilty of manslaughter, a violation of La. R.S. 14:31, and sentenced to twenty years at hard labor. Following the denial of her motion to reconsider sentence, the defendant appeals, designating seven assignments of error.

FACTS
In a statement videotaped on the day of the killing, the defendant gave her account of her killing of the victim, Shelia Hawkins, as follows. After cleaning the refrigerator in the house in which she, her father, and the victim (her father's girlfriend) lived, the defendant left the house to run errands. After completing her errands, the defendant returned to the home with her aunt. At that point the victim questioned the defendant's throwing away of some of the victim's food from the refrigerator. The victim told the defendant that she was "trifling" and "a nasty bitch." The defendant became angry with the victim and told her that she would "kick her ass." The victim grabbed the defendant and a scuffle ensued between the two women.
The scuffle began in or near the defendant's room and continued down the hallway, through the living room, and into the kitchen. The defendant broke free of the victim in the kitchen after the victim pulled off the defendant's shirt. The defendant told the victim that she was going to get a knife to stab her. The defendant swung the knife at the victim twice. After telling the defendant she was calling the police, the victim left the kitchen and went into a bedroom. The defendant pursued the victim into the bedroom and fatally stabbed her in the chest with the knife.
The victim died while on the telephone with the 911 dispatcher. According to the tape of the victim's call, she told the operator that her boyfriend's daughter was trying to stab her and had cut her up. Thereafter, she told the operator that her boyfriend's daughter (the defendant) had stabbed her in the chest.
*78 The defendant's aunt, Patricia Albert, witnessed the scuffle and grabbed the defendant after the defendant armed herself with a knife. However, the defendant broke away from Albert and went into the bedroom where the victim was using the telephone and stabbed her. In response to examination by the State, Albert testified the defendant did not have to stab the victim and the victim was unarmed.
According to Defense Exhibit # 1, a floor plan of the home that became the crime scene, the defendant passed the home's front and back doors on her way from the kitchen to the bedrooms during her pursuit of the victim.

VICTIM CHARACTER EVIDENCE
In assignment of error number 1, the defendant contends the trial court erred in refusing to admit evidence of the victim's prior assaultive behavior against her. She argues this Court found a defendant's right to present a defense significantly impaired under circumstances similar to those of the instant case in State v. Brooks, 98-1151 (La.App. 1st Cir.4/15/99), 734 So.2d 1232, writ denied, 99-1462 (La.11/12/99), 749 So.2d 651.
At trial, the defense moved to question the defendant concerning an alleged threat by the victim to throw a pot of grease on the defendant approximately a month before the killing. The State objected to the motion, arguing the testimony would be irrelevant, self-defense was not being claimed, and the alleged incident was too removed in time and place. The defense argued the testimony would be relevant to the state of mind element of the responsive verdict of manslaughter. The trial court denied the motion and the defense assigned error.
La. Code Evid. art. 404, in pertinent part, provides:
A. Character evidence generally. Evidence of a person's character or a trait of his character, such as a moral quality, is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
. . .
(2) Character of victim. (a) Except as provided in Article 412, evidence of a pertinent trait of character, such as a moral quality, of the victim of the crime offered by an accused, ... provided that in the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of his dangerous character is not admissible; provided further that when the accused pleads self-defense and there is a history of assaultive behavior between the victim and the accused and the accused lived in a familial or intimate relationship such as, but not limited to, the husband-wife, parent-child, or concubinage relationship, it shall not be necessary to first show a hostile demonstration or overt act on the part of the victim in order to introduce evidence of the dangerous character of the victim, including specific instances of conduct and domestic violence;...
. . .
B. Other crimes, wrongs, or acts.
. . .
(2) In the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of the victim's prior threats against the accused or the accused's state of mind as to the victim's dangerous character is not admissible; provided that when the accused pleads *79 self-defense and there is a history of assaultive behavior between the victim and the accused and the accused lived in a familial or intimate relationship such as, but not limited to, the husband-wife, parent-child, or concubinage relationship, it shall not be necessary to first show a hostile demonstration or overt act on the part of the victim in order to introduce evidence of the dangerous character of the victim, including specific instances of conduct and domestic violence;....
Both La. Code Evid. art. 404(A)(2) and La. Code Evid. art. 404(B)(2) provide exceptions to their general rules of inadmissibility. However, these exceptions require the defendant to lay a foundation of either an "overt act" on the part of the victim at the time of the offense or if the defendant claims self-defense, a foundation of a history of assaultive behavior between the defendant and the victim and that the defendant and the victim lived in a "familial or intimate relationship."
Self-defense was never seriously contended in the instant case. While the defense used the term "self-defense" during its opening statement, the reference was in the context of counsel's statement that the jury would have to decide if the killing constituted second degree murder, manslaughter, was justified, or was committed in self-defense. The facts established at trial did not support a theory of self-defense, but rather established that the defendant although, perhaps initially provoked by the victim, was the aggressor at the time of the killing.
A homicide is justifiable when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. La. R.S. 14:20(1). However, a person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. La. R.S. 14:21.
In regard to the "overt act" exception, our brethren in the Fourth Circuit have noted why the exception is so limited, to-wit:
That the deceased's reputation should in such situations be accepted as affecting the defendant's apprehensions is clear. But the unconditional and indiscriminate admission of such evidence is dangerous. The danger is, not only that the deceased's reputed character, once in evidence, will be appealed to as justifying the deliberate destruction by private hands of a detested malefactor, but also that, though no plausible situation of self-defence [sic] is otherwise evidence, this evidence will be improperly used to confuse the issue as if there were real doubt about the necessity for defence [sic] and the apprehension of danger.
State v. James, 95-1182, p. 3 (La.App. 4th Cir.6/5/96), 675 So.2d 1224, 1226, quoting Wigmore on Evidence, § 246 at 46-47 (3d ed. 1940).
In the instant case, the trial court correctly held the proposed defense testimony inadmissible. The testimony was ripe for the improper use noted by the court in James. Further, any slight probative value of the testimony was substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, and waste of time. Relevant evidence is evidence that tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *80 La. Code Evid. art. 401. All relevant evidence is admissible except as otherwise provided by positive law. Evidence that is not relevant is not admissible. See La. Code Evid. art. 402. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay or waste of time. La. Code Evid. art. 403.
Additionally, any overt act by the victim against the defendant in the instant case occurred prior to, and not at the time of, the killing. In order for evidence to be admissible under the overt act exception, the overt act must have occurred at the time of, and not prior to, the killing. See State v. Miles, 98-2396, pp. 7-8 (La.App. 1st Cir.6/25/99), 739 So.2d 901, 906-07, writ denied, 99-2249 (La.1/28/00), 753 So.2d 231.
Lastly, we note that the circumstances in the instant case were not similar to those in Brooks. Brooks involved a second degree murder prosecution[2] of a defendant who shot an intoxicated victim after the victim and another man, Robertson, approached the defendant and a woman outside a dance hall. Brooks, 98-1151 at pp. 2-3, 734 So.2d at 1233. The defendant urged a defense of self-defense and defense of another. Brooks, 98-1151 at p. 3, 734 So.2d at 1233. Prior to trial, the defense moved in limine, seeking a ruling allowing evidence of the victim's abusive behavior (including death threats) toward the defendant. Brooks, 98-1151 at p. 3, 734 So.2d at 1233-34. The trial court denied the motion in limine without reasons and did not allow the defense to proffer testimony. Brooks, 98-1151 at p. 4, 734 So.2d at 1234. On appeal, finding a hiatus in the record concerning whether or not the defendant had knowledge at the time of the offense of an unrelated shooting involving the victim and Robertson, this Court remanded for a hearing with instructions to the trial court to review and rule on the admissibility of the evidence the defendant had attempted to proffer. Brooks, 98-1151 at pp. 16-18, 734 So.2d at 1240-41.
In Brooks, the defendant's knowledge of the victim's involvement in an unrelated shooting, if established, would have provided a basis for the introduction of evidence helpful to the defense of self-defense and defense of another. In the instant case, the evidence did not support the theory of self-defense. This assignment of error is without merit.

JURY INSTRUCTION
In assignment of error number 2, the defendant contends the trial court erred in denying his request to include a special jury instruction on self-defense. The defendant argues the jury might reasonably have determined that she reasonably believed she was in imminent danger of losing her life or receiving great bodily harm and that the killing was, under the circumstances, necessary to save herself from that danger. The defendant relies upon defense counsel's reference to self-defense during opening argument, the evidence concerning the victim's beating her, and the trial court's exclusion of evidence of the victim's prior assaultive behavior.[3]
After the defense rested at trial, the trial court asked the State and the defense whether they had any requests for special *81 instructions. The defense requested a special instruction on self-defense and justifiable homicide. The trial court denied the request, finding that such an instruction was warranted only under circumstances in which a reasonable person could conclude that there was serious danger to his own life, and the facts of the defendant's case clearly showed that the victim had withdrawn from the fight, had left the room, and was calling police for assistance when the defendant killed her. The defense assigned error to the court's ruling.
If supported by the evidence at trial, the defendant is entitled to an instruction, that may be delivered by the trial court under its general duty to charge jurors "[a]s to the law applicable to the case," La. Code Crim. P. art. 802(1), that an individual is entitled to act in self-defense upon a reasonable belief that he would thereby prevent the intentional infliction of serious bodily injury to his person. State v. Deshotel, 96-0778, (La.5/31/96), 674 So.2d 260.
There was no error in the trial court's refusal to give the requested jury instruction in the instant case. Self-defense was not supported by the evidence at trial, and thus, the defendant was not entitled to a self-defense jury instruction. Defense counsel's reference to self-defense during opening argument was not evidence; it was a statement of counsel. While there was evidence at trial concerning the victim's beating of the defendant, there was also evidence that the victim was unarmed, stopped beating the defendant, went into a bedroom away from the defendant, and was using the telephone prior to the killing. There was no evidence that the defendant was in imminent danger of losing her life or receiving great bodily harm and that she had to kill the victim to save herself. This assignment of error is without merit.

CHANGE OF PLEA
In assignment of error number 3, the defendant contends the trial court erred in denying the defense request to enter a dual plea of not guilty and not guilty by reason of insanity. She argues the court abused its discretion in substituting its discretion for a determination that belonged to the jury and in denying the request to change the plea when the request was not made to delay the trial and was not frivolous.
The defendant was arraigned and pled not guilty on March 26, 1997. On March 2, 1998, she moved to change that plea to not guilty and not guilty by reason of insanity. The motion was heard on May 20, 1998. At the hearing, the defense relied upon four medical reports, but conceded that none of the doctors had found the defendant to be insane at the time of the offense. Finding that the testimony of the defendant's doctors would serve only to confuse the jury, the trial court denied the motion. The defense assigned error to the court's ruling. Trial commenced on June 15, 1998. Subsequently, at the motion to reconsider sentence hearing, the defense conceded that its motive in attempting to change the defendant's plea was to get evidence of the defendant's diminished capacity before the jury.
La. Code Crim. P. art. 561, in pertinent part, provides:
The defendant may withdraw a plea of "not guilty" and enter a plea of "not guilty and not guilty by reason of insanity," within ten days after arraignment. Thereafter, the court may, for good cause shown, allow such a change of plea at any time before the commencement of the trial.
A trial court's determination that a defendant failed to show good cause for a *82 change of plea under Article 561 has been upheld where the defense presented no indicia of the defendant's insanity at the time of the offense, but has been held to constitute an abuse of discretion where the defense presented documents indicating that the defendant was mentally retarded, had limited ability to determine right or wrong in certain situations, and did not seem to know right from wrong. Compare State v. Baldwin, 388 So.2d 664, 670 (La. 1980), cert. denied, 449 U.S. 1103, 101 S.Ct. 901, 66 L.Ed.2d 830 (1981), and State v. Delpit, 341 So.2d 876 (La.1977).
A defendant is exempt from criminal responsibility if the circumstances indicate that because of a mental disease or mental defect, he was incapable of distinguishing between right and wrong with reference to the conduct in question. La. R.S. 14:14. However, a mental defect, disorder, or condition short of insanity cannot serve to negate specific intent and reduce the grade of the offense. State v. Koon, 96-1208, p. 19 (La.5/20/97), 704 So.2d 756, 768, cert. denied, 522 U.S. 1001, 118 S.Ct. 570, 139 L.Ed.2d 410 (1997).
The trial court did not abuse its discretion in denying the motion to change plea in the instant case. The defense presented no indicia of the defendant's insanity at the time of the offense, and thus failed to show good cause for a change of plea. Accordingly, this assignment of error is without merit.

MOTION TO SUPPRESS 911 TAPE
In assignment of error number 4, the defendant contends the trial court erred in overruling her motion to suppress the 911 tape. She argues the probative value of the tape was outweighed by its prejudicial impact, the admission of the tape denied her the opportunity to test the veracity of the victim's accusations through confrontation, and the tape was not admissible under any hearsay exception.[4]
Prior to trial, the defense moved to suppress the audio tape of the victim's 911 call. The trial court held a hearing on the motion wherein the defense raised the arguments asserted in the instant assignment of error. The State responded that the contents of the tape were not hearsay pursuant to La. Code Evid. art. 801(D)(4), and even if they were hearsay, they were admissible under numerous hearsay exceptions. Finding that the tape started with the commission of the crime and went to its end, the trial court denied the motion to suppress. The defense objected to the court's ruling.
La. Code Evid. art. 801(D)(4) provides that statements are not hearsay if they are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events, and which are necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.
There was no error in the denial of the motion to suppress. The victim's statements on the tape were not hearsay. The statements were made under the immediate pressure of the crime, were not a narration of the crime after its occurrence, and formed one continuous transaction in conjunction with the crime.
Further, even assuming the balancing test of La. Code Evid. art. 403 has *83 application to evidence admissible under La. Code Evid. art. 801(D)(4),[5] that test was satisfied in this matter. The probative value of the victim's statements on the tape was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay or waste of time.
We find the defendant's argument that the tape should have been kept out of evidence to avoid prejudicing her confrontation rights to be untenable. The fact that the defendant stabbed the victim to death was uncontested in this matter. Any prejudice to the defendant's confrontation rights caused by the playing of the victim's statements concerning the stabbing certainly was not unfair. This assignment of error is without merit.

EXCESSIVE SENTENCE
In assignment of error number 5, the defendant contends the trial court erred in imposing an excessive sentence upon her. In assignment of error number 6, the defendant contends the trial court erred in failing to properly comply with the requirements of La. Code Crim. P. art. 894.1. In assignment of error number 7, the defendant contends the trial court erred in denying the motion to reconsider sentence. She argues the sentence was violative of La. Code Crim. P. art. 894.1 and unconstitutionally excessive.

La. Code Crim.P. art. 894.1
The Louisiana Code of Criminal Procedure sets forth items which must be considered by the trial court before imposing sentence. La. Code Crim. P. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the criteria. State v. Herrin, 562 So.2d 1, 11 (La.App. 1st Cir.), writ denied, 565 So.2d 942 (La.1990). In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Watkins, 532 So.2d 1182, 1186 (La.App. 1st Cir.1988).

Constitutional Excessiveness
Article I, Section 20, of the Louisiana Constitution of 1974 prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it is so disproportionate as to shock one's sense of justice. State v. Reed, 409 So.2d 266, 267 (La.1982). A trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Lanclos, 419 So.2d 475, 478 (La.1982).
Pertinent to this matter is the statute which provides that whoever commits manslaughter shall be imprisoned at hard *84 labor for not more than forty years. La. R.S. 14:31(B). The defendant was sentenced to twenty years at hard labor.
Noting that it had ordered and reviewed a pre-sentence investigation in this case, the trial court gave the following reasons for the sentence imposed: the defendant had no criminal background with the exception of the instant offense; any lesser sentence than a lengthy jail term would deprecate the seriousness of the offense; and the killing was senseless, useless, unnecessary, and should not have taken place.
A thorough review of the record reveals that the trial court adequately considered the criteria of Article 894.1 and did not manifestly abuse its discretion in imposing the sentence herein. See La. Code Crim. P. art. 894.1(A)(3), (B)(21), and (B)(28). Further, the sentence was not grossly disproportionate to the severity of the offense, and thus was not unconstitutionally excessive. Accordingly, these assignments of error are without merit.
CONVICTION AND SENTENCE AFFIRMED.
WEIMER, J., concurs.
I concur in the result. I believe the portion of the 911 tape recorded at the time the victim initially called was inadmissible as hearsay. The portion of the tape covering the events of the attack itself was admissible. However, admission of the initial portion of the tape was harmless error. I do not believe admission of the beginning of the tape caused the jury to reach a result which was incorrect.
NOTES
[1] Honorable H. Ward Fontenot, 38th Judicial District Court, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The defendant was convicted of manslaughter. Brooks, 98-1151 at p.2, 734 So.2d at 1233.
[3] The defendant concedes this last argument was the subject of assignment of error number 1.
[4] Our resolution of this assignment of error causes us to pretermit consideration of this last argument.
[5] The Louisiana Supreme Court has left open the question of the applicability of the Article 403 test to integral act evidence under La. Code Evid. art. 404(B). See State v. Colomb, 98-2813, pp. 4-5 (La.10/1/99), 747 So.2d 1074, 1076. Both La. Code Evid. art. 404(B) and La. Code Evid. art. 801(D)(4) have their origins in the res gestae doctrine.