STATE OF LOUISIANA
v.
ANTWINE MAGEE
No. 2008 KA 1526.
Court of Appeals of Louisiana, First Circuit.
September 11, 2009.
Not Designated for Publication
WALTER P. REED, District Attorney, KATHRYN LANDRY, Attorneys for State-Appellee
FRANK SLOAN, C. GARY WAINWRIGHT, Attorneys for Defendant-Appellant Antwine Magee.
Before: WHIPPLE, HUGHES, and WELCH, JJ.
WELCH, J.
The defendant, Antwine Magee, was charged by amended grand jury indictment with one count of second degree murder (Count I), a violation of La. R.S. 14:30.1; and one count of armed robbery (Count II), a violation of La. R.S. 14:64, and pled not guilty on both counts. Following a jury trial, on Count I, he was found guilty of the responsive offense of manslaughter, a violation of La. R.S. 14:31; and on Count II, he was found guilty as charged. On Count I, he was sentenced to thirty-five years at hard labor. On Count II, he was sentenced to thirty-five years at hard labor without benefit of parole, probation, or suspension of sentence to run concurrently with the sentence imposed on Count I. He now appeals, contending that the trial court imposed unconstitutionally excessive sentences in this matter; that trial counsel's failure to move for reconsideration of the sentences constituted ineffective assistance of counsel; and that the trial court failed to properly advise him of the delays for applying for post-conviction relief. We affirm the convictions and sentences on Counts I and II.

FACTS
The victim, Phillip Partman, lived in a house trailer near his mother's house in Franklinton, Louisiana. On January 8, 2005, at approximately midnight, three men stormed the victim's trailer, wrapped a cord around his neck, ransacked the trailer, fatally shot the victim, and fled the scene. A fourth man was seen waiting nervously in a car during the offense. The victim was shot seven times, and the wounds indicated he may have been rotating or ducking as he was shot.
The victim's cousin, Derrick Magee, went to check on the victim during the incident and heard men inside the house trailer demanding money from the victim. Derrick went to get help and returned with another cousin, Dennis Magee. After Dennis kicked open the door of the victim's trailer, one of the assailants shot at him, but missed him.
Following an anonymous telephone call, the police questioned the defendant concerning his involvement in the crime. He initially denied any involvement, but later implicated himself, Teamus Magee, Nicholas Magee, and Torres "Toto" Gatlin in the crime. In a January 10, 2005 audiotape statement, the defendant indicated that he had been drinking beer, snorting cocaine, and smoking pot with Teamus, Nicholas, and Gatlin when "someone" suggested that the men needed a "lick," meaning needed to commit a robbery. The defendant drove the other men around, pointed out the victim's trailer, and advised the men that the victim sold marijuana. The defendant and his passengers agreed to rob the victim. Thereafter, the defendant borrowed a car from Derrick "Zulu" LaFrance and went with Teamus to get his gun to use in the robbery. The defendant claimed that during the robbery, Teamus forced open the victim's door and held a gun on the victim, while the defendant and Gatlin searched the victim's trailer. The defendant claimed that Nicholas initially waited in the car, but left on foot before the defendant, Teamus, and Gatlin returned. The defendant claimed that he removed one and one-half ounces of marijuana from the victim's trailer and Gatlin removed $7. The defendant claimed that Teamus shot at Dennis and shot the victim during the robbery. According to the defendant, after the robbery, he, Teamus, and Gatlin went back to Teamus's house, divided up the marijuana, and smoked "blunts."

EXCESSIVE SENTENCES; INEFFECTIVE ASSISTANCE OF COUNSEL
In assignment of error number 1, the defendant argues that the sentences imposed on Counts I and II gave him "virtually no credit" for his voluntary confession and the fact that he did not take the stand and try to lie his way out of his involvement in the crimes. He also argues that the sentences imposed should not have been longer than those offered in the plea agreement he rejected. In assignment of error number 2, he argues that trial counsel failed to preserve the right to appeal the sentences and there was no strategic reason for counsel's failure.
We will address assignment of error number 1, even in the absence of a timely motion to reconsider sentence or a contemporaneous objection, because it would be necessary to do so as part of the analysis of the ineffective assistance of counsel claim. See State v. Bickham, 98-1839, pp. 6-7 (La. App. 1st Cir. 6/25/99), 739 So.2d 887, 891-92.
The Louisiana Code of Criminal Procedure sets forth items which must be considered by the trial court before imposing sentence. La. C.Cr.P. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the criteria. In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Hurst, 99-2868, p. 10 (La. App. 1st Cir. 10/3/00), 797 So.2d 75, 83, writ denied, XXXX-XXXX (La. 10/5/01), 798 So.2d 962.
Article I, Section 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it is so disproportionate as to shock one's sense of justice. A trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of manifest abuse of discretion. Hurst, 99-2868 at pp. 10-11, 797 So.2d at 83.
A claim of ineffectiveness of counsel is analyzed under the two-pronged test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In order to establish that his trial attorney was ineffective, the defendant must first show that the attorney's performance was deficient, which requires a showing that counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment. Secondly, the defendant must prove that the deficient performance prejudiced the defense. This element requires a showing that the errors were so serious that the defendant was deprived of a fair trial; the defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show that the error had some conceivable effect on the outcome of the proceeding. Rather, he must show that but for the counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Further, it is unnecessary to address the issues of both counsel's performance and prejudice to the defendant if the defendant makes an inadequate showing on one of the components. State v. Serigny, 610 So.2d 857, 859-860 (La. App. 1st Cir. 1992), writ denied, 614 So.2d 1263 (La. 1993).
As applicable here, whoever commits the crime of manslaughter shall be imprisoned at hard labor for not more than forty years. La. R.S. 14:31(B). On Count I, the defendant was sentenced to thirty-five years at hard labor.
Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence. La. R.S. 14:64(B). On Count II, the defendant was sentenced to thirty-five years at hard labor without benefit of parole, probation, or suspension of sentence.
Shirley Partman, the victim's mother, testified at the sentencing hearing. She indicated the victim had been her help around the house because his other siblings lived in Houston. The victim was the third of her six children, but he was "just like [her] first." At family events, she missed the victim raiding her refrigerator and seeing what she was cooking. She also missed the victim asking her what she was cooking for dinner. She indicated the victim had made electrical and plumbing repairs at her house and, in her opinion, was a gifted artist.
Bessie Magee, the defendant's mother, also testified at the sentencing hearing. The defendant was born on November 19, 1977, and was the youngest of her three children. The defendant was so good at football when he was a junior-high school student, that he played high school football. The defendant always listened to her and was great in school. Bessie Magee stated she knew that she "never raised a murderer," and that the defendant was at home alone with her when "this happened." She pleaded with the court not to take her son away forever.
Following the defendant's convictions, the court ordered a pre-sentence investigation report (PSI). The PSI indicated that the defendant was a first-felony offender. The PSI also indicated that the defendant was facing "another violent offense charge" due to his participation with "a few jail buddies" in beating an inmate senseless. The probation and parole officer preparing the PSI indicated that the defendant's actions following his arrest for the instant offenses indicated that he was not sorry for what occurred in the victim's home and that he had not learned any lessons. The officer also noted that the defendant had pled not guilty even though he had given a complete statement of his active participation in the crimes. Additionally, the officer noted that the defendant and his friends had intentionally gone into the victim's home to rob him and had shot at neighbors who attempted to help the victim. The officer asked, "If [the defendant] did not want to be a part of a shooting[,] why did he not stop and help the victim instead of driving off with the shooter and leaving the victim to die?" The officer concluded that the defendant had "displayed a complete disregard for the laws of society and a total lack of respect for the property of others. We believe [that] subject is a serious danger to society and will learn the consequences of his choices and actions by receiving the maximum penalty allowed by the law."
The defense counsel advised the court that the defendant denied participating in the aggravated battery mentioned in the PSI, had pled not guilty to that charge, and had not been convicted of that offense.
In sentencing the defendant, the trial court noted: the defendant had been convicted of manslaughter and armed robbery after being initially charged with first degree murder and armed robbery, and after standing trial for second degree murder and armed robbery; and he had rejected a plea bargain offer for twenty-five years. The court indicated that it had considered all of the aggravating circumstances in the case, which were: that the defendant knew he was going to rob the victim; that he arranged for the car, rather than taking one of his own cars; that the defendant drove to the victim's house, parked the car, and left a man in the car, while the defendant, Teamus, and Gatlin went into the victim's trailer, intending to steal drugs and money from him; that the defendant ransacked the victim's home and found marijuana, while his accomplice found $7; that when the robbery was disturbed, the shooting started and the victim was dead on the floor; that the defendant, Teamus, and Gatlin then got into a car, sped off, and smoked the marijuana. The court found that the defendant's actions were "extremely calloused," and that he had left a man dying on the floor of his home after stealing his money and drugs. In regard to mitigating factors, the court noted: that the defendant had no juvenile or adult criminal record; that he had a family who loved him; that the crime was solved because of the defendant's mother and relatives wanting to do the right thing; and that, even though the defendant had initially denied any involvement in the crimes, he had later told the police what had happened, and without his confession, the crime probably would never have been solved.
A thorough review of the record reveals that the trial court adequately considered the criteria of Article 894.1 and did not manifestly abuse its discretion in imposing the sentences herein. See La. C.Cr.P. art. 894.1(B)(9), (B)(21), (B)(28) & (B)(33). Further, the sentences imposed were not grossly disproportionate to the severity of the offenses and thus, were not unconstitutionally excessive. The defendant's claim that he was given "virtually no credit" for his voluntary confession and the fact that he did not lie at trial has no basis in the record; rather, the sentencing transcript indicates that, in sentencing the defendant, the trial court listened to testimony, reviewed the PSI, and carefully considered all the aggravating and mitigating circumstances in the case. Further, it is permissible for the State to encourage guilty pleas by offering substantial benefits to a defendant for a guilty plea and by threatening more severe punishment should a negotiated plea be refused. A defendant who refuses a plea bargain cannot expect to receive the benefits of that abandoned agreement after conviction. See Cousin v. Blackburn, 597 F.2d 511, 512 (5th Cir. 1979) (per curiam), cert, denied, 445 U.S. 945, 100 S.Ct. 1343, 63 L.Ed.2d 779 (1980).
In regard to the defendant's ineffective assistance of counsel claim, we note, even assuming arguendo, that the defense counsel performed deficiently in failing to timely move for reconsideration of the sentences, the defendant suffered no prejudice from the deficient performance because this court considered the defendant's excessive sentences argument in connection with the ineffective assistance of counsel claim.
These assignments of error are without merit.

NOTICE OF PRESCRIPTIVE PERIOD FOR POST-CONVICTION RELIEF
In assignment of error number 3, the defendant argues that the trial court failed to properly advise him of the prescriptive period for filing for post-conviction relief. The defendant is correct.
The trial court advised the defendant that, "under the provisions of Article 930.8 of the Louisiana Code of Criminal Procedure, I'm advising you that you have only two years to file any and all petitions for postconviction relief." Louisiana Code of Criminal Procedure article 930.8(A), in pertinent part provides, "No application for post-conviction relief, ... shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922...." (Emphasis added.)
As the issue has been raised herein, it is apparent that the defendant has notice of the correct limitation period and/or has an attorney who is in the position to provide him with such notice. Although we have done so in the past, we decline to remand for the trial court to provide such notice. Instead, out of an abundance of caution and in the interest of judicial economy, we note that La. C.Cr.P. art. 930.8(A) generally provides that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922. See State v. Godbolt, XXXX-XXXX, pp. 7-8 (La. App. 1st Cir 11/3/06), 950 So.2d 727, 732.
This assignment of error has merit.

CONCLUSION
For the foregoing reasons, the defendant's convictions and sentences are affirmed.
CONVICTIONS AND SENTENCES ON COUNTS I AND II AFFIRMED.