McClendon, j.
 

 | defendant, Douglas K. Craddock, was charged by bill of information with one count of armed robbery, a violation of LSA-R.S. 14:64 A, and pled not guilty. Following a jury trial, he was found guilty as charged. Defendant was sentenced to twenty-five years at hard labor without benefit of probation, parole, or suspension
 
 *793
 
 of sentence. He moved for reconsideration of sentence, but the motion was denied. Defendant now appeals, contending in counseled and pro se assignments that the evidence was insufficient, the sentence was excessive, and trial defense counsel had a conflict of interest. For the following reasons, we affirm the conviction and sentence.
 

 FACTS
 

 On April 29, 2008, David Martinez was employed as a pharmacist by Galvez Pharmacy in Prairieville, Louisiana. At approximately 5:30 p.m., defendant entered the business and asked to speak to Martinez. When Martinez approached defendant, defendant pointed a gun close to Martinez’s head and told him he was going to “blow [Martinez’s] f-.head off and he was going to kill somebody” if Martinez did not do exactly what defendant told him to do. Martinez believed the gun was real.
 

 Defendant told the other workers in the store, all of whom were female, to lie down on the floor and be quiet, and he would not hurt anyone. Defendant threatened to hurt someone unless he got some Adderall, and Martinez filled a grocery bag with all of the Adderall in the store. Defendant then ordered Martinez to get another bag and fill it with all of the Oxycontin and Oxycodone in the store. One of the female workers got up off the floor to get a bag and defendant “freaked out.” Defendant put his gun to the worker’s head, called her a b-, and told her she better do “damn well what he said or she was dead.” Martinez became concerned that defendant would hurt the worker, and told everyone to remain calm and do what defendant told them to do. After Martinez was unable to find a larger grocery bag, defendant grabbed a bag from the garbage can and emptied the full bag of drugs into it and ordered Martinez to |sput the Oxycontin into the bag. Defendant also took the cash from the cash register. Defendant then told Martinez to give him the videotape and disconnect the phones. Martinez told defendant that the videotape was in the back of the store, and defendant marched Martinez to the back of the store, holding the gun to his back.
 

 However, before defendant and Martinez reached the back of the store, a customer entered the store with a prescription to be filled. Martinez turned to help the customer, and defendant concealed his gun under his shirt. When another customer entered the store, defendant fled with the bag. Martinez testified he was scared for his own safety and the safety of the other workers during the robbery and feared that defendant was making everyone get on the floor so that he could execute them by shooting them in the back of the head.
 

 Defendant was apprehended following a car chase in which he drove in excess of seventy miles-per-hour on Louisiana Highway 44 and ran at least one stop sign. His vehicle contained sixty-four pill bottles from Galvez Pharmacy containing pills with a value of $15,982.85, $815.00 in cash, a white garbage bag containing three other bags, a Wal-Mart bag with a receipt dated April 29, 2008, for the purchase of a BB pistol, and a container for the pistol, with a pack of BBs still in it. After being advised of his Miranda
 
 [1]
 
 rights, defendant stated that he was a junkie, that he was not trying to hurt anyone, and that he purchased the BB gun from Wal-Mart prior to the robbery.
 

 At trial, the defense conceded that on April 29, 2008, defendant used a toy gun to intimidate the workers in Galvez Pharmacy to give him drugs and money. Defen
 
 *794
 
 dant claimed he never intended to harm anyone. He claimed he came from a good family, joined the United States Navy at the age of seventeen, and served in Desert Storm. He testified that he worked offshore for two years and then obtained an engineer’s license to work on a seagoing tug and an anchor-handling boat. He claimed that in 1998, he was the victim of an armed Lrobbery, was shot during the robbery and, thereafter, became addicted to painkillers.
 

 SUFFICIENCY OF THE EVIDENCE
 

 In pro se assignment of error number 2, defendant argues that the state failed to establish that he used a dangerous weapon during the robbery.
 

 The standard of review for sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime and defendant’s identity as the perpetrator of that crime beyond a reasonable doubt. In conducting this review, we also must be expressly mindful of Louisiana’s circumstantial evidence test, which states in part, “assuming every fact to be proved that the evidence tends to prove, in order to convict,” every reasonable hypothesis of innocence is excluded. LSA-R.S. 15:438;
 
 State v. Wright,
 
 98-0601, p. 2 (La.App. 1 Cir. 2/19/99), 730 So.2d 485, 486,
 
 writs denied,
 
 99-0802 (La.10/29/99), 748 So.2d 1157, and 00-0895 (La.11/17/00), 773 So.2d 732.
 

 When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime.
 
 Wright,
 
 98-0601 at p. 3, 730 So.2d at 487.
 

 Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. LSA-R.S. 14:64 A. “Dangerous weapon” includes “any ... substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm.” LSA-R.S. 14:2 A(3). A person who commits a robbery by pointing an unloaded Rand unworkable pistol at the victim can be adjudged guilty of armed robbery.
 
 State v. Levi
 
 259 La. 591, 598-99, 250 So.2d 751, 754 (1971). Additionally, a toy gun can be considered a dangerous weapon if the jury determines the interaction between the offender and the victim created a highly charged atmosphere whereby there was danger of serious bodily harm resulting from the victim’s fear for his life.
 
 State v. Woods,
 
 97-0800, p. 11 (La.App. 1 Cir. 6/29/98), 713 So.2d 1231, 1239,
 
 writ denied.
 
 98-3041 (La.4/1/99), 741 So.2d 1281.
 

 After a thorough review of the record, we are convinced that any rational trier of fact, viewing the evidence presented in this case in the light most favorable to the state, could find that the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of armed robbery and defendant’s identity as a perpetrator of that offense against the victim. The testimony of Martinez established that defendant’s interaction with him created a highly charged atmosphere
 
 *795
 
 whereby there was danger of serious bodily harm resulting from Martinez’s fear for his life. The verdict rendered against defendant indicates that the jury accepted this testimony. This court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder’s determination of guilt. The testimony of the victim alone is sufficient to prove the elements of the offense. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency.
 
 State v. Lofton,
 
 96-1429, p. 5 (La. App. 1 Cir. 3/27/97), 691 So.2d 1365, 1368,
 
 writ denied,
 
 97-1124 (La.10/17/97), 701 So.2d 1331. Further, in reviewing the evidence, we cannot say that the jury’s determination was irrational under the facts and circumstances presented to them.
 
 See State v. Ordodi,
 
 06-0207, p. 14 (La.11/29/06), 946 So.2d 654, 662. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby | ^overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury.
 
 State v. Calloway,
 
 07-2306, pp. 1-2 (La.1/21/09), 1 So.3d 417, 418 (per curiam).
 

 This assignment of error is without merit.
 

 EXCESSIVE SENTENCE
 

 In counseled assignment of error number 1, defendant argues that the sentence imposed was excessive because he was a first-felony offender, had a severe addiction to prescription drugs, and robbed a pharmacy with an unloaded BB gun in order to obtain painkillers. In pro se assignment of error number 1, defendant argues that the trial court neither gave reasons to justify the “excessive sentence” imposed, nor considered mitigating factors, including defendant’s employment history and family ties. In counseled assignment of error number 2, defendant argues that the trial court abused its discretion in denying the motion to reconsider sentence because the sentence was excessive.
 

 The Louisiana Code of Criminal Procedure sets forth items which must be considered by the trial court before imposing sentence. LSA-C.Cr.P. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the criteria. In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court’s stated reasons and factual basis for its sentencing decision.
 
 State v. Hurst,
 
 99-2868, p. 10 (La.App. 1 Cir. 10/3/00), 797 So.2d 75, 83,
 
 writ denied.
 
 00-3053 (La.10/5/01), 798 So.2d 962. Remand for full compliance with Article 894.1 is unnecessary when a sufficient factual basis for the sentence is shown.
 
 State v. Harper,
 
 07-0299, p. 15 (La.App. 1 Cir. 9/5/07), 970 So.2d 592, 602,
 
 writ denied,
 
 07-1921 (La.2/15/08), 976 So.2d 173.
 

 Louisiana Constitution Article I, Section 20 prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant’s constitutional right against excessive punishment and is subject to appellate review. Generally, a sentence is considered excessive if it |7is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punish
 
 *796
 
 ment are considered in light of the harm to society, it is so disproportionate as to shock one’s sense of justice. A trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of manifest abuse of discretion.
 
 Hurst,
 
 99-2868 at pp. 10-11, 797 So.2d at 83.
 

 Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence. LSA-R.S. 14:64 B. In this matter, defendant was sentenced to twenty-five years at hard labor without benefit of probation, parole, or suspension of sentence.
 

 Defendant testified at the sentencing hearing. He apologized to all of the victims and was aware that he had scared a lot of people. He claimed the robbery had been committed by a person with a very serious and severe addiction to drugs. He reminded the court he had been the victim of an armed robbery in 1998, had been shot during the robbery, and had become addicted to prescription pain medication. He testified that in the time he had been incarcerated, he had not been written up, he had attended church, he had signed up with alcoholics anonymous and narcotics anonymous, and he had continuously worked toward self-improvement. He stated he was not a bad person, but a good person who had made a terrible mistake.
 

 The trial court noted that defendant was a thirty-eight year old male, officially classified as a first-felony offender, who had been convicted of armed robbery. The court stated a pre-sentence investigation report (PSI) had been ordered and made the report a part of the proceedings by reference. The court noted the arrest report of Detective Teddy Gonzales that indicated that following a report of a robbery at gunpoint at Galvez Pharmacy, defendant fled from the police at a high rate of speed. Defendant was eventually apprehended, but | «refused to move his hands from under his body and a Tazer had to be used on him. The pills and cash taken from Galvez Pharmacy were recovered from defendant’s vehicle, along with a BB gun.
 

 The court noted that Ascension Parish Sheriffs Office Chief Bacala opined that defendant should receive the maximum sentence, and Assistant District Attorney Larry Buquoi recommended that defendant should receive the maximum sentence. The PSI recommended a sentence of 15 to 25 years at hard labor for defendant. The court stated, after consideration of the sentencing guidelines of LSA-C.Cr.P. art. 894.1, that it found the case to be a typical case, and that it would sentence defendant accordingly.
 

 A thorough review of the record reveals that the trial court adequately considered the criteria of Article 894.1 and did not manifestly abuse its discretion in imposing sentence.
 
 See
 
 LSA-C.Cr.P. art. 894.1 A(3), B(5), B(10), B(ll), B(14), B(19), B(21). Additionally, the sentence imposed was not grossly disproportionate to the severity of the offense and thus, was not unconstitutionally excessive.
 
 See State v. Sterling,
 
 453 So.2d 625, 630-31 (LaApp. 1 Cir.1984).
 

 These assignments of error are without merit.
 

 CONFLICT OF INTEREST
 

 In pro se assignment of error number 3, defendant contends that his trial counsel’s prior service as an assistant district attorney at the time the charge against him was filed created a conflict of interest that adversely affected counsel’s
 
 *797
 
 performance and the trial court failed to sufficiently inquire into the conflict.
 

 The customary remedy for an alleged conflict of interest is disqualification of the attorney or firm with the conflict. In determining whether or not a conflict exists, courts often look to the Rules of Professional Conduct. Furthermore, the Louisiana Supreme Court has determined that the ethical rules which regulate attorneys’ law practices have been recognized as having the force and effect of substantive law. The burden of proving disqualification of an attorney or other officer of the court rests on the party making the challenge.
 
 Walker v. State, |3Dept. of Tramp. and Dev.,
 
 01-2078, 01-2079, p. 8 (La.5/14/02), 817 So.2d 57, 59-60.
 

 Louisiana State Bar Articles of Incorporation, Art. XVI, Rules of Professional Conduct, Rule 1.9, provides:
 

 (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person’s interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
 

 (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client
 

 (1) whose interests are materially adverse to that person; and
 

 (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing.
 

 (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
 

 (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
 

 (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.
 

 Additionally, State Bar Articles of Incorporation, Art. XVI, Rules of Professional Conduct, Rule 1.11 provides, in pertinent part:
 

 (a) Except as law may otherwise expressly permit, a lawyer who has formerly served as a public officer or employee of the government:
 

 (1) is subject to Rule 1.9(c); and
 

 (2) shall not otherwise represent a client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency gives its informed consent, confirmed in writing, to the representation.
 

 [[Image here]]
 

 (e) As used in this Rule, the term “matter” includes:
 

 lm(l) any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest or other particular matter involving a specific party or parties; and
 

 (2) any other matter covered by the conflict of interest rules of the appropriate government agency.
 

 In the instant case, during voir dire, defense counsel Crawford advised the court that defendant had been given legal
 
 *798
 
 advice by “Mr. Francis” that it was improper for Crawford to defend him because at the time of defendant’s arrest, Crawford was a member of the district attorney’s staff. Crawford stated that he worked as an assistant district attorney in St. James Parish
 
 [2]
 
 in April of 2008. The state indicated it had asked Crawford if he “knew” the instant case prior to being appointed to the case, and Crawford had stated he “never heard the case, never knew anything about the case.” Crawford also informed the court that he had met with defendant in regard to the case the previous night until after 11:00 p.m. and had seen him many times over the previous several weeks in preparation for trial. Crawford indicated that defendant’s father had rejected a plea offer from the state. Crawford also stated that he had spoken to defendant’s grandmother and a Baton Rouge attorney concerning the plea offer in the case, but they had advised him that defendant rejected the offer. Crawford advised the court he had sleepless nights preparing for the case and had given defendant his full attention. He indicated he took his professional responsibility very seriously and there was no ineffective assistance of counsel in the case. The court questioned how defendant could be prejudiced if Crawford had nothing to do with the case from the time of the arrest, and noted, if anything, Crawford’s prior service as an assistant district attorney would appear to be advantageous to defendant.
 

 A thorough review of the record shows that defendant failed to carry his burden of proving Crawford violated either Rule 1.9 or Rule 1.11 of the Rules of Professional Conduct. Defendant presented no evidence to counter Crawford’s assertion that during his employment as an assistant district attorney, he had no ^knowledge of the case against defendant. There is no proof in the record to the contrary. Thus, there is no evidence to support a conclusion that Crawford should be disqualified.
 
 See Walker,
 
 01-2078, 01-2079 at p. 5, 817 So.2d at 61.
 

 This assignment of error is without merit.
 

 CONVICTION AND SENTENCE AFFIRMED.
 

 [1]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
 

 [2]
 

 . The Twenty-third Judicial District consists of the parishes of Ascension, Assumption, and St. James.