**STATE of Louisiana**

v.

**Dondrique L. LEWIS**

**NO. 2016 KA 0533**

Court of Appeal of Louisiana,
First Circuit.

OCTOBER 31, 2016

Warren L. Montgomery, District Attorney, Matthew Caplan, Assistant District Attorney, Covington, LA, Attorneys for Appellee, State of Louisiana

Frederick H. Kroenke, Jr., Baton Rouge, LA, Attorney for Defendant-Appellant, Dondrique L. Lewis

BEFORE: HIGGINBOTHAM, THERIOT, AND CHUTZ, JJ.

HIGGINBOTHAM, J.

Defendant, Dondrique L. Lewis, was charged by felony bill of information with two counts of attempted second degree murder, violations of La. R.S. 14:27 and 14:30.1. Defendant was initially found mentally incompetent and unable to proceed to trial, but later the trial court found defendant competent to proceed. At that time, he pled not guilty and not guilty by reason of insanity to each count. The trial court subsequently made a second finding that defendant was competent to proceed to trial, and defendant was allowed to withdraw his plea of not guilty by reason of insanity.

Following a jury trial, defendant was found guilty as charged on both counts. The trial court then denied defendant's motions for new trial and postverdict judgment of acquittal. On count one, the trial court sentenced defendant to fifteen years at hard labor, without benefit of parole, probation, or suspension of sentence. On count two, the trial court initially sentenced defendant to five years at hard labor, believing that the conviction on count two was for aggravated battery. Upon realizing the mistake, the trial court vacated the five-year sentence on count two and sentenced defendant to ten years at hard labor, without benefit of parole, probation, or suspension of sentence. The trial court also ordered both sentences to be served concurrently. The trial court denied defendant's motion to reconsider sentence. Defendant now appeals, alleging a single assignment of error arguing that his sentences are excessive.

**FACTS**

On the morning of March 21, 2012, in separate incidents, defendant shot his brother, Damion Lewis, and an acquaintance, Andre Jackson. Both men suffered

serious injuries, but survived and were able to testify at trial,

Damion Lewis testified that he did not remember much of what occurred on the day of the shootings. He recalled that on the morning of the shooting, he had been at his sister's house on Washington Avenue in Slidell, preparing to cut grass. Damion testified that he could not recall what events led to his getting shot in the head. The state questioned Damion about a series of statements he gave to the police while he was in the hospital following his shooting. The implication from the state's questioning was that Damion, defendant, and a friend (Jamal Robinson), were preparing to cut grass when defendant went inside his sister's home. Shortly thereafter, Damion and Jamal heard a gunshot and began to run. Damion told the police that, as he ran, he saw defendant running next to him with something behind his back. As Damion ran, he was shot in the back of the head, and he fell to the ground.

Jasmine Hartley testified at trial as a witness to Damion's shooting. On the morning of March 21, 2012, she was walking near the intersection of Washington Avenue and Martin Luther King Boulevard when she saw two men running and "fussing." Hartley testified that Damion was telling defendant, "Don't shoot me." Defendant then shot Damion and ran into some nearby woods.

Andre Jackson testified that he lived on Tupelo Street in Slidell and was showering on the morning of March 21, 2012. While in the shower, Jackson heard someone knock on his door and call his nickname, "Dre." Jackson opened the door and saw defendant standing outside. According to Jackson, defendant took two steps back and shot him twice. The bullets pierced Jackson's liver and aorta, injured his thumb, and resulted in a bullet being permanently lodged near his spinal cord.

Leora Bolden testified that she was working at the JB Grocery and Deli on Lincoln Avenue around 9:30 a.m. on the day of the shootings. Bolden described that defendant ran into the store looking frightened and stating that someone was "after him." Bolden called 911, and the police arrived relatively quickly. Lieutenant Kevin Dupuy was one of the initial officers to come into contact with defendant. According to Lieutenant Dupuy, defendant exited the store in a hysterical or excited manner, screaming, "The gun is over there. The gun is over there." Lieutenant Dupuy detained defendant, and the gun was recovered from a nearby yard on Lincoln Avenue.

Defendant testified at trial. He stated that the only thing he remembered about the day of the shootings was being at his sister's house and that his brother, Damion, was also there. Defendant did not remember anything about either of the shootings, though he did not dispute that he shot Damion or Jackson.

## EXCESSIVE SENTENCE

In his sole assignment of error, defendant contends that the sentences imposed for each of his convictions are unconstitutionally excessive. Defendant argues that the sentences are unjustifiably excessive because he is "obviously mentally ill" and requires treatment and medication, rather than incarceration. The state argues that defendant's appeal is premature because the trial court has "maintained jurisdiction" under La. Code Crim. P. art. 881.1 to reconsider defendant's sentence at a later date and, alternatively, that the sentences are not excessive.

### *Prematurity*

 Defendant's sentencing hearing took place on January 6, 2016. After the trial judge initially pronounced defendant's sentences (including the mistaken five-year

sentence on count two), he stated, "I maintain jurisdiction of this case for a period of one year under Article 881.1." In the same proceeding, after correcting the sentence on count two, the trial judge again stated that he was "maintaining jurisdiction under 881.1." The state argues that because the trial court has "maintained jurisdiction" under Article 881.1, defendant's sentences are not final, and his case is unappealable.

Only a final judgment or ruling is appealable. La. Code Crim. P. art. 912(A). A defendant may appeal from a judgment that imposes sentence. See La. Code Crim. P. art. 912(C)(1). The jurisdiction of the trial court is divested and that of the appellate court attaches upon the entering of the order of appeal. La. Code Crim. P. art. 916. Thereafter, the trial court has limited jurisdiction to take certain actions, including to take appropriate action pursuant to a properly made or filed motion to reconsider sentence. See La. Code Crim. P. art. 916(3).

Article 881.1 does not speak to the trial court's ability to "maintain jurisdiction." Rather, the article provides that in felony cases, the trial court may extend the period of time in which the state or a defendant may make or file a motion to reconsider sentence. See La. Code Crim. P. art. 881.1(A)(1); see also State v. Jones, 2014–1543 (La.App. 1 Cir. 4/24/15), 2015 WL 1893200 (unpublished), writ denied, 2015–0984 (La. 9/11/15), 176 So.3d 1040.

In the instant case, the trial judge's statement that he was "maintain[ing] jurisdiction of this case for a period of one year under Article 881.1" is simply an extension of time for defendant to file a motion to reconsider sentence under Article 881.1(A)(1). That extension of time does not divest this Court of jurisdiction. Article 916(3) clearly contemplates that a defendant may file a motion to reconsider sentence during the pendency of his appeal. The trial court has jurisdiction to rule on any such motion that is properly filed. The trial court denied defendant's oral motion to reconsider at the sentencing hearing, so a review of that ruling is properly before this Court.[1] The record does not reflect any further motions to reconsider. As a result, defendant's appeal is not premature, and this Court has jurisdiction to hear the instant appeal.[2]

### Excessiveness

Article I, Section 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. **State v. Sepulvado**, 367 So.2d 762, 767 (La. 1979). A sentence is constitutionally excessive if it is grossly disproportionate to the severity of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. See **State v. Hurst**, 99–2868 (La.App. 1 Cir. 10/3/00), 797 So.2d 75, 83, writ denied, 2000–3053 (La. 10/5/01), 798 So.2d 962. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. **State v. Hogan**, 480 So.2d 288, 291 (La. 1985). A trial court is given wide discretion in the imposition of sentences

---

1. Defendant also supplemented his oral motion with a written motion to reconsider. In denying this written motion, the trial court noted that the motion to reconsider had been denied in open court.

2. Because it is a hypothetical scenario, we reserve judgment about the circumstance where the trial court might later attempt to grant a motion to reconsider sentence filed by defendant after the issuance of this appeal opinion, but within the extended time allowed by the trial court.

within statutory limits, and the sentence imposed by it should not be set aside as excessive in the absence of manifest abuse of discretion. **State v. Lobato,** 603 So.2d 739, 751 (La. 1992).

Having been convicted of two counts of attempted second degree murder, defendant was subject to two separate sentences of not less than ten nor more than fifty years without benefit of parole, probation, or suspension of sentence. See La. R.S. 14:27(D)(1)(a) & 14:30.1(B). Thus, the trial court's imposition of concurrent sentences of fifteen years and ten years at hard labor, without the benefits of parole, probation, or suspension of sentence, were low-range sentences for these offenses.

At defendant's sentencing hearing, the trial court heard an impact statement from Andre Jackson's wife, Shawanna, who described the lingering emotional, physical, and mental issues experienced by herself and her husband. Additionally, the court heard testimony from eleven witnesses who testified on defendant's behalf, including Damion, who asked for the trial court to have some mercy on his brother. Other acquaintances and family members testified as to the general good character of defendant, despite his apparent mental issues. Defendant's mother explained that his mental state had improved with medication. The trial court also considered the contents of a presentence investigation report ("PSI") that recommended defendant's "mental illness be considered a significant mitigating factor while ensuring any sentence be commensurate with the severity of his crimes and the life-changing impact" they had on the victims.

In articulating reasons for defendant's sentence, the trial court noted that Andre Jackson still suffers physically from his injuries, in addition to the emotional and mental toll of the incident. The trial court recognized Damion's permanent physical disabilities, including deficits to his speech and motor functions; however, the court did hear Damion's request for mercy. Turning to the PSI, the trial court highlighted a 2006 incident where defendant brandished a weapon. The trial court also restated defendant's mother's testimony that defendant was fine when properly medicated, but noted the mother's admission that she could not ensure defendant would have constant supervision.

In reviewing the factors under La. Code Crim. P. art. 894.1, the trial court recognized that there was no possibility for a suspended sentence or probation under the applicable statutes, that there is an undue risk defendant would commit another crime if a suspended sentence or probation were available, that defendant was in need of correctional treatment or a custodial environment that can best be provided by his commitment to an institution, and that lesser sentences would deprecate the seriousness of the offenses. The trial court found that defendant's conduct created a risk of death or great bodily harm to more than one person, that defendant used actual violence and a dangerous weapon in the commission of the offenses, and that defendant foreseeably endangered human life by discharging a firearm during the commission of an offense. In mitigation, the trial court found that there "were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense." In particular, the trial court stated that "while the defendant did not enter a plea of not guilty by reason of insanity, there are reasons to doubt that [defendant] was operating at the highest level of mental functioning."

In its reasons for sentencing, the trial court directly addressed the issue raised by defendant on appeal—his mental illness. The trial court noted defendant's mental illness as a substantial mitigating factor, as recommended by the PSI, and

imposed the sentences it believed to be appropriate in consideration of the totality of the circumstances. On appellate review of a sentence, the relevant question for the reviewing court is whether the trial court abused its broad sentencing discretion, and not whether other sentences might have been more appropriate. **State v. Soraparu**, 97–1027 (La. 10/13/97), 703 So.2d 608 (per curiam).

Nothing in the record causes us to conclude that the district court abused its sentencing discretion. Accordingly, defendant's assignment of error is without merit. We hereby affirm the convictions and sentences.

**CONVICTIONS AND SENTENCES AFFIRMED.**